# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 14-CV-6647 (JFB)(AKT)

MARCEL C. BRISTOL,

Plaintiff,

VERSUS

PROBATION DEPARTMENT OF NASSAU COUNTY ET AL.,

Defendants.

**MEMORANDUM AND ORDER**
March 8, 2016

JOSEPH F. BIANCO, District Judge:

On November 10, 2014, plaintiff Marcel C. Bristol ("Bristol" or "plaintiff"), proceeding *pro se* and *in forma pauperis*, filed this action against defendants Probation Department of Nassau County, Nassau County's District Attorney's Office, former District Attorney Kathleen Rice ("former District Attorney Rice"), Ed Schenk ("Schenk," sued herein as Sthen Thibault, Attorney and Legal Advisor for the Nassau County Department of Probation), Harvey John, Detective of Nassau County ("Detective John"), Ronald S. Schepis, Detective of Nassau County ("Detective Schepis"), ADA Anne M. Huggard ("ADA Huggard"), and Former ADA Lauren Doddato ("ADA Doddato"), (collectively, "defendants").[1] Plaintiff alleges that the

---

[1] On July 13, 2015, plaintiff filed a letter motion voluntarily withdrawing his claims against the Probation Department of Nassau County and Nassau County District Attorney's Office "inasmuch as they are not a suiable (sic) entity." (Dkt. No. 29.) It is correct that both of these entities are "administrative arms" of a municipality, Nassau County, and accordingly, cannot be sued. *See, e.g.*, *David v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) ("Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued."); *Miller v. Nassau Cty. Dist. Attorney's Office*, No. 09-CV-2819 (JS)(WDW), 2009 WL 5218606, at *3 (E.D.N.Y. Dec. 28, 2009) (dismissing claims against Nassau County District Attorney's Office with prejudice "[b]ecause the District Attorney's Office is not an entity capable of being sued"); *Ceparano v. Suffolk Cty.*, No. 10-CV-2030 (SJF)(ATK), 2010 WL 5437212, at *6 (E.D.N.Y. Dec. 15, 2010) (dismissing claims against Suffolk County District Attorney's Office and Suffolk County Probation Department because they are "administrative arms of the municipality and therefore lack the capacity to be sued."). Thus, plaintiff's motion to voluntarily withdraw his claims against the Nassau County Department of Probation and Nassau County District Attorney's Office is granted. In his letter motion, plaintiff also requested that the "name Sthen Thibault A/K/A Thibault Sthenk be stricken from the caption of

defendants deprived him of his right not to be punished twice for the same offense under the Fifth and Fourteenth Amendments, his right not to be seized and imprisoned without due process of law under the Fourth, Fifth, and Fourteenth Amendments, his right not to be deprived of liberty and property without due process of law under the Fourth, Fifth, and Fourteenth Amendments, and his right against cruel and unusual treatment under the Fourth, Eighth, and Fourteenth Amendments.

Defendants now move for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, on the grounds that (1) plaintiff's § 1983 claims are barred by probable cause and the statute of limitations; (2) plaintiff's claims against former District Attorney Rice, ADA Huggard, and ADA Doddato are without merit because they have absolute immunity, and further, Rice had no personal involvement in the matter; (3) the Nassau County Attorney's Office and the Probation Department of Nassau County cannot be sued; (4) plaintiff's restitution funds were properly disbursed pursuant to a court order; (5) plaintiff's conditions of confinement claims do not rise to the level of a constitutional violation; and (6) the defendants are entitled to qualified immunity.

For the reasons discussed below, the defendants' motion is granted in part, and denied in part.

I. BACKGROUND

A. Facts

The following facts are taken from the complaint filed on November 10, 2014, (Compl.) and are not findings of fact by the Court. Instead, the Court will assume the facts to be true and, for purposes of the pending motion for judgment on the pleadings, will construe them in a light most favorable to the plaintiff, the non-moving party.

Plaintiff alleges that, on or about January 4, 2008, Detectives John and Schepis arrested plaintiff without a warrant, and illegally seized $4,915.00 and other personal property from plaintiff, incident to the arrest. (Compl. ¶ 5.) Plaintiff claims that, contrary to required law and the Nassau County Police Department's own regulation, Detectives John and Schepis failed to voucher the seized currency or record plaintiff's personal property. (*Id.* at ¶ 6.) Plaintiff alleges that, although "there has never been a valid charge or a valid judgment linking the U.S. currency to a felony" or "judgment pursuant to Art. 13-A of the CPLR of The State of New York authorizing the forfeiture of the money," "despite all efforts, they still refused to return the money to plaintiff." (*Id.*)

Plaintiff alleges that, on or about September 30, 2009, former District Attorney Rice and ADA Huggard "in a ruse to legitimize the seizure of the $4,915.00 from plaintiff, prepared a letter entitled Rice v. Marcel C. Brisol, seeking to entice plaintiff to a fake settlement." (*Id.* at ¶ 7.) Plaintiff alleges that former District Attorney Rice and ADA Huggard "[k]new well that they had no authority to withhold the U.S.' (sic) currency from plaintiff. The contents of the letter are completely false, intimidating and deceptive, tailored to coerce threaten and extort property from plaintiff, using fraudulently the United States Mails Service." (*Id.*) Plaintiff alleges that his only conviction in Nassau County was by a jury trial on September 17, 2009, and "has no relation to the U.S. currency; and

---

the case and the body of the complaint thereof, and be substituted with the correct defendant, namely Edward Schenk." (Dkt. No. 29.) Plaintiff's request is granted.

has since been reversed and vacated on direct appeal . . . leaving them no choice but to return the property." (*Id.*) Plaintiff alleges that "to date, there has never been any forfeiture action or Judgment against [him]." (*Id.*)

Plaintiff alleges that, on or about February 6, 2013, upon learning that plaintiff's judgment of conviction was vacated, former District Attorney Rice and ADA Doddato "specifically and falsely made an affirmation, purported to be in support to an application for a writ of Habeas Corpus Ad Prosequendum," knowing they had no authorization to do so. (*Id.*) Plaintiff claims that, when Rice and Doddato had to disclose the judge who granted the writ, they lied and "named a Judge who had nothing to do with the writ, and never granted it." (*Id.*) Plaintiff alleges that, as a result, he was taken into custody, brought before a judge for "corrupt proceedings," and remanded to the Nassau County Correctional Center ("NCCC") indefinitely, even though Rice and Doddato were not ready for trial, there was no trial date, and the presiding judge was under mandatory retirement and, thus, could not preside over criminal trials. (*Id.*) Plaintiff claims that their "sole motive was retaliation to inflict multiple punishments to plaintiff for the same offense" and that they had a goal of "remov[ing] plaintiff from a civil non punitive confinement within the Immigration detention Facility [ ] to expose him and punish him in a punitive and criminal confinement atypical to the INS Detention Facility, without a judgment or due process, in their own jail Facility with the worst inhumane conditions." (*Id.*) Plaintiff alleges that the NCCC had "unconstitutional practices and [was] notorious for abuses and civil rights violations, unbearable as to amount to torture." (*Id.*) Specifically, plaintiff alleges that his cell was "so cold that you cannot sleep," that there was no clean drinking water, that there was "a broken sewage system with back up fecal material in the cell and they provided no glove to clean and deal with the situation," that "all the pipes are rusty," and that there was "no soap to clean the toilettes." (*Id.*) Plaintiff alleges that, as a result, he "caught a fungus infection in his left big toe." (*Id.*) Plaintiff further claims that "the whole place was filthy, infested with rodents [and] insects and the odor was noxious at all times; and the food was poorly prepared in very unsanitary condition (sic)." (*Id.*) Plaintiff claims that he was remanded to the NCCC for eight months. (*Id.*) Plaintiff alleges that, on or about November 11, 2013, he appeared before the Honorable Christopher Quinn, "who declared his imprisonment in the Nassau County Jail unconstitutional, and released him." (*Id.*)

Plaintiff also alleges that the Nassau County Probation Department is wrongfully withholding $8,415.00 from plaintiff. (Compl. ¶ 9.) Plaintiff claims that he contacted the Nassau County Probation Department by phone and fax in order to get his money back, and was told that as long as his conviction has been vacated, he would get a refund, but they would need to verify it first. (*Id.*) Plaintiff alleges that "[a]fter about a month of inquiry," he was directed to speak directly with a specific attorney, who requested that plaintiff send him a copy of the judgment vacating the conviction. (*Id.*) Plaintiff contends that he spoke to Mr. Schenk, who stated that he needed to confer with the Nassau County District Attorney and prosecuting ADA. (*Id.*) Plaintiff alleges that, when he called Mr. Schenk back the next day, Mr. Schenk was "very hostile, [said that] he is not releasing any of the funds, and that plaintiff had not to call him anymore, and that 'we intend to get a conviction again, and that the system did not work, we will make sure it works fine next time.'" (*Id.*) Plaintiff contends that this was a "deliberate effort to

deprive plaintiff of his property without the due process of law." (*Id.*)

### B. Procedural History

Plaintiff commenced this action on November 10, 2014. On July 10, 2015, the defendants filed a motion for judgment on the pleadings. On August 14, 2015, plaintiff filed his opposition, and on August 24, 2015, defendants filed their reply. The Court has fully considered the parties' submissions.

### II. STANDARD OF REVIEW

Courts evaluate a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) under the same standard as a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), setting forth a two-pronged approach for courts deciding a motion to dismiss. The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

The Court notes that in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim.").

Where, as here, the plaintiff is proceeding *pro se*, "a court is obliged to construe his

pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). A *pro se* plaintiff's complaint, while liberally interpreted, still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

## III. DISCUSSION

Plaintiff brings several claims under Section 1983 against the defendants. To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). Plaintiff brings claims under Section 1983 alleging: (1) a violation of his right against double jeopardy; (2) a violation of his due process rights due to his incarceration at NCCC; and (3); a violation of his due process rights due to the retention of his funds; and (4) a violation of his Eighth Amendment right due to the conditions of his confinement. The Court addresses each of these arguments in turn. For purposes of this motion, the parties do not dispute that defendants were acting under color of state law. The question presented, therefore, is whether plaintiff has adequately pled a plausible claim that defendants' conduct deprived plaintiff of the rights he asserts.

### A. Double Jeopardy

#### 1. Legal Standard

Plaintiff alleges that his remand to the NCCC, following former District Attorney Rice and ADA Doddato's application for a writ of Habeas Corpus Ad Prosequendum, violates the Double Jeopardy Clause. (Compl. ¶ 3(a); Pl.'s Opp'n at 11.) The Double Jeopardy Clause protects an individual's right not to be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V, cl. 2. It prohibits both the second prosecution of a defendant for the same offense after an acquittal or a conviction and the imposition of multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794 (1989). "It has long been settled, however, that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988) (citing *United States v. Ball*, 163 U.S. 662 (1896); *United States v. Tateo*, 377 U.S. 463, 465 (1964)). The Supreme Court has recognized an exception to this "general rule that the Double Jeopardy Clause does not bar the retrial of a defendant who has succeeded in getting his conviction set aside for error in the proceedings below" in the situation "where a defendant's conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain the jury's verdict." *Id.* at 39 (citing *Burks v. United States*, 437 U.S. 1, 18 (1978)).

2. Application

In this case, plaintiff was remanded to the NCCC after former District Attorney Rice and ADA Doddato applied for a writ of Habeas Corpus Ad Prosequendum following the Second Department's opinion remanding his criminal case for a new trial. Although plaintiff contends that he was impermissibly tried twice for the same crime, his criminal case was remitted for a new trial because the trial court failed to ensure that his waiver of his right to counsel was made knowingly, intelligently, and voluntarily. (Ex. C to Lai Decl., *People v. Bristol*, 958 N.Y.S.2d 215, 218 (N.Y. App. Div. 2013)). The Second Department specifically found that "the verdict of the guilt was not against the weight of the evidence." *Id.* at 217. Thus, because on appeal, plaintiff succeeded in getting his conviction set aside due to an error in the proceedings, and there was no finding that the verdict was against the weight of the evidence, the subsequent prosecution of plaintiff did not violate plaintiff's rights. Therefore, plaintiff's claim that defendants' violated his double jeopardy right is dismissed.

B. Due Process Claims

1. Legal Standard

In order to assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation and emphasis omitted). Thus, a claimed violation of procedural due process involves a two-step analysis: (1) the court examines whether the State deprived plaintiff of a constitutionally protected interest, and (2) if so, the court determines whether the procedures surrounding that deprivation were constitutionally adequate. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations omitted).

2. Application

Plaintiff alleges that his due process rights were violated when (1) he was remanded to NCCC "without competent judicial authority, in Nassau County through foisted documents prepared by Lauren Doddato, and approved by Kathleen Rice pulling all strings to circumvent statutory mandate"; and (2) his "U.S. currency" was taken and kept "without a valid judgment or a hearing to determine whether the currency was linked to criminality, rather, the defendants attempted to do that by trick." (Pl.'s Opp'n at 11; *see also* Compl. ¶ 3.)

a. Remand to NCCC

Plaintiff claims that he was "seized and imprisoned without due process" when he was "taken from a non punitive (sic) federal facility to a punitive facility, without competent judicial authority" due to the actions of ADA Doddatto and former District Attorney Rice. (Pl.'s Opp'n at 11.) However, it is clear from the record that plaintiff's remand to NCCC was pursuant to the Second Department's opinion remitting his case for a new trial. *People v. Bristol*, 958 N.Y.S.2d at 218. Thus, plaintiff's due

6

process claim based on his remand to the NCCC is without merit, and is dismissed.[2]

b. Plaintiff's Funds

Plaintiff also claims that his due process rights were violated when his "U.S. currency" was taken and kept "without a valid judgment or a hearing to determine whether the currency was linked to criminality." (Pl.'s Opp'n at 11.) Defendants argue that this claim should be dismissed because plaintiff's restitution funds were "distributed pursuant to a valid court order." (Defs.' Mem. of Law at 19.)

Plaintiff appears to challenge two aspects of the seizure of his funds: first, Detectives John and Schepis' alleged seizure of $4,915.00 in U.S. currency and other personal property from plaintiff when they arrested him, (Compl. ¶ 5), and second, Nassau County Probation Department and Schenk's alleged refusal to release plaintiff's funds when his conviction was vacated in 2013. (*Id.* ¶ 9.)

i. 2009 Seizure of Funds

As an initial matter, plaintiff's challenge to the Detectives John and Schepis' alleged seizure of plaintiff's U.S. currency and personal property in 2009 is barred by the statute of limitations.

---

[2] In any event, the prosecutors, former District Attorney Rice, ADA Huggard, and ADA Doddato, would be entitled to absolute immunity on both the Double Jeopardy and Due Process claims because plaintiff's claims against them arise from their pursuit of a criminal proceeding against him. "It is by now well established that 'a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution' 'is immune from a civil suit for damages under § 1983.'" *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 431 (1976)) (internal citation omitted). "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.'" *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (alteration in original) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). For example, in *Hill*, the Second Circuit held that an Assistant District Attorney's alleged acts of, *inter alia*, "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" were "clearly protected by the doctrine of absolute immunity as all are part of his function as an advocate." *Id.* at 661; *see also Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006) ("Plaintiff's claims against [his prosecutor], which encompass activities involving the initiation and pursuit of prosecution [including fabricating evidence used at trial, withholding exculpatory evidence, suborning perjury, and attempting to intimidate him into accepting a guilty plea], are foreclosed by absolute prosecutorial immunity, regardless of their alleged illegality."). Thus, "[i]t is well-settled that prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process' are entitled to absolute immunity from an action for damages under § 1983." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993) (quoting *Imbler*, 424 U.S. at 430); *see Anilao v. Spota*, 774 F. Supp. 2d 457, 476-78 (E.D.N.Y. 2011) (detailing standard). Prosecutors do not enjoy absolute immunity, however, for "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Imbler*, 424 U.S. at 430-31. Plaintiff's allegations relate to former District Attorney Rice, ADA Huggard, and ADA Doddato's actions in relation to applying for a writ of habeas corpus ad prosequendum. Plaintiff's allegations do not in any way allege that any prosecutor engaged in an investigative or administrative function that would cause immunity not to attach. Therefore, these defendants would be absolutely immune from any claim arising out of their prosecution of the plaintiff. Defendants also argue that the claims against former District Attorney Rice must be dismissed because plaintiff failed to allege that Rice had any personal involvement in plaintiff's underlying case. However, because the Court has found that plaintiff's claims against former District Attorney Rice would be entitled to absolute prosecutorial immunity, it need not, and does not, reach this issue.

"Section 1983 does not provide a specific statute of limitations. Thus, courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citing *Owens v. Okure*, 488 U.S. 235, 249-51 (1989) and *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). "Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations." *Id.* (citing *Pearl*, 296 F.3d at 79 and N.Y. C.P.L.R. § 214).

Plaintiff has exceeded the three-year statute of limitations for his claim alleging wrongful seizure of his property, which occurred in 2008. Thus, plaintiff's due process claim based on the alleged wrongful seizure of his property in 2008 must be dismissed.[3]

### ii. 2013 Retention of Funds

As to plaintiff's claim regarding the alleged refusal to release his funds when his underlying conviction was vacated and remitted for a new trial in 2013, although defendants cite to a restitution order, that restitution order was based on plaintiff's sentencing for a conviction that has now been vacated. Defendants have failed to provide this Court with an order allowing the funds to be held pending a new trial, or a citation to any legal authority for the proposition that the defendants can continue to hold plaintiff's money even when the conviction underlying the restitution order has been vacated.

Furthermore, even assuming the restitution funds had already been distributed, defendants have cited no authority for the proposition that plaintiff is not entitled to reimbursement of his funds if his conviction is vacated. In fact, defendants' brief contains no legal citations whatsoever in connection with their argument on this claim, but rather, contains simply a conclusory argument that the criminal matter is still open. Thus, at this juncture, defendants' motion to dismiss plaintiff's due process claim on grounds that his funds were properly distributed is denied. Defendants can renew the motion on this ground with additional documentation and/or legal argument with respect to these funds.[4]

### C. Conditions of Confinement

Plaintiff's complaint includes an Eighth Amendment claim regarding his conditions of confinement at the NCCC.[5] Specifically, plaintiff alleges that his cell was "so cold that you cannot sleep," that there was no clean drinking water, that there was "a broken sewage system with back up fecal material in the cell and they provided no glove to clean and deal with the situation," that "all the pipes are rusty," and that there was "no soap to clean the toilettes (sic)." (Compl. ¶ 7.) Plaintiff alleges that, as a result, he "caught a fungus infection in his left big toe." (*Id.*) Plaintiff further claims that "the whole place was filthy, infested with rodents [and] insects and the odor was noxious at all times; and the food was poorly prepared in very unsanitary condition (sic)." (*Id.*) Such allegations are

---

[3] To the extent that plaintiff also challenges former District Attorney Rice and ADA Huggard's preparation of a letter around September 30, 2009, "to legitimize the seizure of the $4,915.00 from plaintiff," (Compl. ¶ 7), such a claim would also be barred by the statute of limitations, as well as prosecutorial immunity, for the reasons discussed *supra*.

[4] It is not even clear that the funds were distributed. Defendants make a conclusory statement that the funds were disbursed, but the documents submitted just indicate that restitution was ordered. (*See* Ex. E to Lai Decl., Certificate of Disposition; Ex. F to Lai Decl., Amended Restitution/Reparation by Civil Judgment Order.)

[5] Defendants do not argue that plaintiff failed to sue the proper entity with respect to his conditions of confinement claim. In any event, because plaintiff is *pro se*, the Court liberally construes his complaint to allege a claim against the County of Nassau for his prison conditions.

sufficient to plead a plausible claim under the Eighth Amendment.

1. Legal Standard

Plaintiff claims that he was subjected to cruel and unusual punishment because the conditions of his confinement violated contemporary standards of decency. *See Day v. Warren*, 360 F. App'x 207, 208 (2d Cir. 2010); *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). A prisoner alleging this type of Eighth Amendment claim "may prevail only where he proves both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.*, with 'deliberate indifference to inmate health or safety.'" *Phelps*, 308 F.3d at 185 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The objective requirement "'does not mandate comfortable prisons,' [but] prisoners may not be denied 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)). Thus, the Eighth Amendment requires prisoners receive their "basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation and internal quotation marks omitted). Prison officials also may not "pose an unreasonable risk of serious damage to [prisoners'] future health." *Id.* at 35. Regarding the subjective requirement, "'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Phelps*, 308 F.3d at 185-86 (quoting *Farmer*, 511 U.S. at 837).

2. Application

"[U]nsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment." *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013). Plaintiff has alleged that there was no clean drinking water, that there was "a broken sewage system with back up fecal material in the cell and they provided no glove to clean and deal with the situation," that "all the pipes are rusty," and that there was "no soap to clean the toilettes (sic)." (Compl. ¶ 7.) Plaintiff further claims that "the whole place was filthy, infested with rodents [and] insects and the odor was noxious at all times." (*Id.*) Such allegations are sufficient to state a plausible claim under the objective prong of plaintiff's conditions of confinement claim. *See, e.g.*, *Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) (reversing a grant of summary judgment where plaintiff alleged rodent infestation and exposure to human feces, urine, and sewage water in his cell); *Wright v. McMann,* 387 F.2d 519, 526 (2d Cir. 1967) (concluding that allegations by prisoner that, *inter alia*, he was deprived of basic elements of hygiene such as soap and toilet paper, and that cell was filthy and unheated would, if established, constitute cruel and unusual punishment); *Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 738 (W.D.N.Y. 2015) ("At this stage in the litigation, Plaintiff has alleged the objective prong of his conditions of confinement claim. Plaintiff has alleged that he was exposed to human excrement and bodily fluids in a poorly ventilated cell over the course of multiple days.").

Further, "[c]ourts in the Second Circuit have recognized that 'depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth

9

Amendment.'" *Varricchio v. Cty. of Nassau*, 702 F. Supp. 2d 40, 56 (E.D.N.Y. 2010) (quoting *Quintana v. McCoy*, No. 9:03-CV-0924, 2006 WL 2827673, at *6 (N.D.N.Y. Sept. 29, 2006)); *see also Moncrieffe v. Witbeck*, No. 97-CV-253, 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (same); *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir. 1983) (per curiam) (concluding that the Eighth Amendment requires prisoners to be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it") (quotation omitted); *Chapdelaine v. Keller*, No. 95-CV-1126 (RSP)(GLS), 1998 WL 357350, at *12 (N.D.N.Y. Apr. 16, 1998) ("[W]hen establishing that the food served by a prison violates the Eighth Amendment, an inmate must show that the food was either nutritionally inadequate or prepared, and served in a fashion that presents an immediate danger to the inmate's health or well-being.") (citation omitted).

The Second Circuit has also held "that an Eighth Amendment claim may be established by proof that the inmate was subjected for a prolonged period to bitter cold." *Gaston*, 249 F.3d at 164 (reinstating Eighth Amendment claim of frigid temperatures in plaintiff's cell); *see also Walker*, 717 F.3d at 126-28 (finding that plaintiff plausibly alleged a cruel and unusual punishment claim where he alleged "stifling heat in the summer and freezing cold in the winter"); *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (reversing grant of summary judgment in favor of defendants where there was evidence that plaintiff was "deliberately exposed to bitterly cold temperature for approximately three months").

Thus, drawing all reasonable inferences in plaintiff's favor, the Court finds that he has plausibly alleged the objective prong of his Eighth Amendment claim based on his allegations of unsanitary conditions in his cell, contaminated food, and a cell so cold that he could not sleep.

Although plaintiff has not specifically alleged that the defendants had knowledge of these conditions, "Defendants' knowledge may be inferred by the simple fact that these Defendants must have viewed the conditions of the cell when they placed Plaintiff in it." *Barnes*, 85 F. Supp. 3d at 738; *see also Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) ("[E]vidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it."); *see also Gaston,* 249 F.3d at 166 (finding Plaintiff's allegation that defendant prison guards "made daily rounds of SHU" was sufficient to allege that defendants had actual knowledge of the inhumane conditions).

Thus, plaintiff has plausibly alleged his conditions of confinement claim under the Eighth Amendment, and defendants' motion for judgment on the pleadings on this claim is denied.

D. Qualified Immunity

Defendants argue that the individual defendants are entitled to dismissal of the claims against them in their individual capacities on the grounds of qualified immunity. However, because of gaps in the record, at this juncture, the Court cannot determine whether Mr. Schenk's conduct violated plaintiff's clearly established rights or whether it would have been objectively reasonable for him to believe that his conduct did not violate plaintiff's rights.

1. Legal Standard

Government actors may be shielded from liability for civil damages by qualified immunity, *i.e.*, if their "conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003); *see also Fielding v. Tollaksen*, 257 F. App'x 400, 401 (2d Cir. 2007) ("The police officers, in turn, are protected by qualified immunity if their actions do not violate clearly established law, or it was objectively reasonable for them to believe that their actions did not violate the law."). As the Second Circuit has noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)). Thus, qualified immunity is not merely a defense, but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the availability of qualified immunity should similarly be decided by a court "[a]t the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Nonetheless, the Second Circuit has emphasized that "a defendant presenting an immunity defense on a Rule 12(b)(6) [or a 12(c)] motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *see also McCray v. City of New York*, Nos. 03-CV-9685 (DAB), 03-CV-9974 (DAB), 03-CV-10080 (DAB), 2007 WL 4352748, at *18 (S.D.N.Y. Dec. 11, 2007) ("A defendant asserting a qualified immunity defense at the 12(b)(6) stage . . . faces a formidable hurdle. Because the evidence supporting a finding of qualified immunity is normally adduced during the discovery process and at trial, the defense of qualified immunity [usually] cannot support the grant of a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim upon which relief can be granted." (internal citations, alteration, and quotation marks omitted)). In particular, the facts supporting the defense must be clear from the face of the complaint. In addition, in such situations, "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 436.

2. Application

As an initial matter, because the claims against former District Attorney Rice, ADA Huggard, and ADA Doddato, Detective John, and Detective Schepis were dismissed, and because the conditions of confinement claim is against only the County, the only remaining claim as to an individual defendant is against Mr. Schenk for the due process claim regarding the withholding of plaintiff's funds in 2013.

Defendants argue only generally that "County Defendants' conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known; it was objectively reasonable for County Defendants to believe that the actions taken were lawful. Therefore, County Defendants' are entitle to qualified immunity and Plaintiff's claims must be dismissed." (Defs.' Mem. of Law at 24.)

The fundamental shortcoming with respect to this claim is that the Court cannot assess the qualified immunity issue because of the gaps in the record as it relates to this

claim.  As discussed *supra*, defendants have failed to provide the Court with any order indicating that plaintiff's funds could be held pending a new trial, or a citation to any legal authority for the proposition that the defendants can continue to hold plaintiff's money even when the conviction underlying the restitution order has been vacated.  Thus, the Court cannot determine whether Mr. Schenk's conduct did not violate plaintiff's clearly established rights or whether it would have been objectively reasonable for him to believe that his conduct did not violate plaintiff's rights.  Therefore, the Court denies the motion to dismiss on qualified immunity grounds, without prejudice to defendants raising this issue in a summary judgment motion.

IV. CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings is granted in part, and denied in part.  Defendants' motion is granted as to plaintiff's claims alleging a violation of his double jeopardy right, due process right regarding his remand to NCCC, and due process right regarding the alleged seizure of his personal property and money in 2009.  However, defendants' motion is denied as to plaintiff's due process claim regarding the alleged refusal to return his funds in 2013, and his conditions of confinement claim.  All claims against former District Attorney Rice, Detective John, Detective Schepis, ADA Huggard, and ADA Doddato are dismissed.

Additionally, plaintiff's motion voluntarily withdrawing his claims against the Nassau County Department of Probation and Nassau County District Attorney's Office, and requesting that the caption be amended to substitute Edward Schenk for defendant Sthen Thibault is granted.  The Clerk of the Court shall amend the caption accordingly.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:  March 8, 2016
        Central Islip, NY


\*\*\*

Plaintiff proceeds *pro se*.  Defendants are represented by Liora M. Ben-Sorek and Thomas Lai, of the Nassau County Attorney's Office, 1 West Street, Mineola, NY 11501.