**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MARCEL C. BRISTOL,

                   *Pro se* Plaintiff,

                          -against-

EDWARD SCHENK and COUNTY OF NASSAU,

                    Defendants.
----------------------------------------------------------X

                  **REPORT AND**
              **RECOMMENDATION**

             CV 14-6647 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, U.S. Magistrate Judge:**

**I.**    <u>PRELIMINARY STATEMENT</u>

      *Pro se* Plaintiff Marcel Bristol ("Plaintiff") commenced this action against myriad

individual and government defendants.  *See* Plaintiff's Complaint ("Compl.") [DE 1].  Plaintiff's

original Complaint asserted causes of action for double jeopardy, unlawful arrest and

imprisonment, due process violations, and violations of the right to be free from cruel and

unusual punishment.  *See generally* Compl.  These claims arose out of Plaintiff's 2008

warrantless arrest by the Nassau County Police Department ("NCPD") for forgery and grand

larceny, NCPD's seizure of $4,915.00 of Plaintiff's money, and Plaintiff's conditions of

confinement at the Nassau County Correctional Center ("NCCC").  *See id.*  On September 17,

2009, Plaintiff was convicted, after a jury trial in Nassau County Supreme Court, of grand

larceny in the second degree, grand larceny in the third degree, criminal possession of a forged

instrument in the second degree, identity theft in the first degree, and a scheme to defraud in the

first degree.  *See People v. Bristol*, 958 N.Y.S.2d 215, 216 (2nd Dep't. 2013).  Plaintiff appealed

his conviction and, on January 23, 2013, the Appellate Division, Second Department vacated the

conviction and remanded the matter for a new trial, finding that the trial court "failed to ensure that the defendant's waiver of his right to counsel was made knowingly, intelligently, and voluntarily." *Id*. at 218.

The instant action was commenced on or about November 10, 2014. *See* Compl. Defendants moved for judgment on the pleadings, *see* Defendants' Memorandum in Support of their First Motion for Judgment on the Pleadings ("Defs.' Mem. I") [DE 27], which Judge Bianco granted, in part, and denied, in part. *See* March 8, 2016 Memorandum & Order [DE 37].[1] Following Judge Bianco's granting leave to amend the pleadings, Plaintiff filed his Amended Complaint on October 20, 2017. *See* Plaintiff's Amended Complaint ("Am. Compl.") [DE 72]. That document remains the operative pleading in this case. On July 2, 2018, Defendants again moved for judgment in their favor, this time with respect to Plaintiff's Amended Complaint. *See* Defendants' Memorandum of Law in Support of County Defendants' Motion for Judgment on the Pleadings Seeking Dismissal of the Amended Complaint ("Defs.' Mem. II") [DE 82].

Judge Bianco has referred Defendants' motion for judgment in their favor as to Plaintiff's Amended Complaint to this Court for a Report and Recommendation as to whether the motion should be granted. *See* DE 86. For the reasons set forth below, this Court respectfully recommends to Judge Bianco that Defendants' second motion for judgment on the pleadings be GRANTED, in part, and DENIED, in part.

---

[1]    The Court hereafter references Judge Bianco's 2016 decision using the Westlaw citation *Bristol v. Prob. Dep't of Nassau Cty.*, No. 14-CV-6647, 2016 WL 873336 (E.D.N.Y. Mar. 8, 2016).

## II.    B<small>ACKGROUND</small>

As noted, Judge Bianco has already ruled on the first iteration of Defendants' motion for judgment on the pleadings.  *See Bristol v. Prob. Dep't of Nassau Cty.*, No. 14-CV-6647, 2016 WL 873336, at *5 (E.D.N.Y. Mar. 8, 2016).  Given the impact of that decision on this Court's analysis of the instant motion, the Court begins by reviewing Judge Bianco's 2016 decision.  It is significant to note from the outset that Plaintiff's Amended Complaint is nearly identical to his initial Complaint.

### A.    Judge Bianco's March 8, 2016 Decision

Judge Bianco issued a twelve-page Memorandum and Order which granted portions of Defendants' Rule 12(c) motion for judgment on the pleadings with respect to Plaintiff's original Complaint.  *See* DE 37.  Plaintiff initially pleaded a double jeopardy claim, alleging that his re-confinement at the NCCC following the Appellate Division, Second Department's remand of his criminal case for a new trial violated his right to be free from prosecution for the same crime twice under the Fifth Amendment to the United States Constitution.  *See* Compl. ¶¶ 3(a) and 7. The Appellate Division held that (1) there was an error in the trial court proceedings, namely, that the trial court failed to conduct a sufficiently searching inquiry when accepting Plaintiff's waiver of counsel, however, (2) "the verdict of guilt was not against the weight of the evidence." *People v. Bristol*, 958 N.Y.S.2d 215, 216 (2nd Dep't. 2013).  Based on these rulings by the Appellate Division, Judge Bianco held that any subsequent prosecution did not violate Plaintiff's double jeopardy rights.  *Bristol*, 2016 WL 873336, at *5.  Accordingly, Judge Bianco dismissed the double jeopardy claim.  *Id.*

Plaintiff's initial Complaint also asserted procedural due process claims, alleging that (1) Plaintiff's remand to the NCCC following the adjudication of his criminal appeal violated his

due process rights, and (2) the seizure of his money without "a valid judgment linking the U.S. Currency to a felony" also violated his due process rights. Compl. ¶ 6; *see id*. ¶¶ 3, 5. With respect to these two due process claims, Judge Bianco found that because the remand was pursuant to the Appellate Division's decision sending Plaintiff's case back down for a new trial, there was no due process violation. *Bristol*, 2016 WL 873336, at \*5. Judge Bianco also held that any challenge to the NCPD's seizure of Plaintiff's personal property upon his arrest in 2008 was barred by the three-year statute of limitations applicable to Section 1983 claims in New York. *Id*. at \*6. However, because the Appellate Division vacated Plaintiff's conviction in 2013, Judge Bianco determined that the restitution order upon which Defendants had relied to sustain their retention and distribution of Plaintiff's funds was no longer valid. *Id*. In the absence of any other authority to sustain the continued withholding or distribution of Plaintiff's funds, Judge Bianco denied Defendants' motion as to this due process claim and granted Defendants leave to "renew the motion on this ground with additional documentation and/or legal argument with respect to these funds." *Id*.

In his initial Complaint, Plaintiff also asserted a claim for violation of his Eighth Amendment rights based on his conditions of confinement at the NCCC. *See* Compl. ¶ 7. According to Plaintiff, his confinement was so "unbearable as to amount to torture," his cell was so cold he could not sleep, he lacked clean drinking water, and, among other things, the sewage system was backed up causing fecal matter to enter his cell, and as a result he "caught a fungus infection on his left big toe." *Id*. Judge Bianco found that Plaintiff had "plausibly alleged the objective prong of his Eighth Amendment claim based on his allegations of unsanitary conditions in his cell, contaminated food, and a cell so cold he could not sleep." *Bristol*, 2016 WL 873336, at \*8. As to the "subjective" prong of an Eighth Amendment claim – that prison

4

officials acted, or omitted to act, with a sufficiently culpable state of mind – Judge Bianco held that the alleged conditions themselves satisfied this prong because "Defendants' knowledge may be inferred by the simple fact that these Defendants must have viewed the conditions of the cell when they placed Plaintiff in it." *Id.* (quoting *Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 738 W.D.N.Y. 2015)). Accordingly, Defendants' motion to dismiss Plaintiff's Eighth Amendment claim was denied. *Bristol*, 2016 WL 873336, at *8.

In addition to the above rulings, Judge Bianco held that individual Defendants District Attorney Rice, ADA Huggard, and ADA Doddato were entitled to broad prosecutorial immunity. *See Bristol*, 2016 WL 873336, at *5 n.2. In the end, Judge Bianco dismissed all claims against DA Rice, ADA Huggard, and ADA Doddato. In doing so, he noted that "because the claims against former District Attorney Rice, ADA Huggard, and ADA Doddato, Detective John, and Detective Schepis were dismissed, and because the conditions of confinement claim is against only the County, the only remaining claim as to an individual defendant is against Mr. Schenk for the due process claim regarding the withholding of plaintiff's funds in 2013." *Id.* at *9. Plaintiff was permitted to substitute Edward Schenk for Sthen Thibault as a Defendant. *Id.* Further, Plaintiff was permitted to voluntarily withdraw his claims against the Nassau County Department of Probation and Nassau County District Attorney's Office. *Id.*

### B. Procedural History Subsequent to Judge Bianco's 2016 Decision

On or about March 15, 2016, Plaintiff filed a letter motion requesting that Judge Bianco reconsider his dismissal of Plaintiff's double jeopardy claim. *See* DE 40. Judge Bianco denied that motion in an Order dated December 30, 2016. *See* DE 47. On January 25, 2017, Plaintiff filed two motions – a letter motion seeking partial judgment on the pleadings against the sole individual defendant, Edward Schenk, and a second motion to amend the pleadings to substitute

a wrongful imprisonment claim for the double jeopardy claim. *See* DE 51. Plaintiff's motion for partial judgment on the pleadings was referred to this Court for a Report and Recommendation on April 6, 2017. *See* DE 61. This Court issued its Report and Recommendation on July 31, 2017, recommending that, in light of the procedural posture of the case, Plaintiff's motion for partial judgment on the pleadings be denied, without prejudice, and with leave to renew at a later time. *See* DE 65. On September 25, 2017, Judge Bianco adopted the Report and Recommendation and denied Plaintiff's motion for partial judgment on the pleadings, while granting Plaintiff leave to submit an Amended Complaint within thirty days of the Court's Order. *See* DE 71. Plaintiff's Amended Complaint was filed on October 20, 2017. *See* DE 72.

On November 14, 2017, Defendants' counsel submitted a letter request to Judge Bianco for a pre-motion conference for purposes of moving for judgment on the pleadings with respect to Plaintiff's Amended Complaint. *See* DE 75. Judge Bianco waived his pre-motion conference requirement and set a briefing schedule for Defendants' second motion for judgment on the pleadings. *See* DE 76. Defendants' motion was filed on July 2, 2018. *See* Defs.' Mem. II. Plaintiff's opposition was filed on July 31, 2017. *See* Plaintiff's Opposition to Defendants' Second Motion for Judgment on the Pleadings ("Pl.'s Opp'n.") [DE 84]. Defendants' Reply was filed on August 8, 2018. *See* Defendants' Reply in Further Support of their Second Motion for Judgment on the Pleadings ("Defs.' Reply") [DE 85].

On October 9, 2018, Judge Bianco referred Defendants' second motion for judgment on the pleadings to this Court for a Report and Recommendation as to whether the motion should be granted. *See* DE 86.

### C.    Plaintiff's Amended Complaint

As Defendants point out, Plaintiff's Amended Complaint is nearly identical to his initial Complaint.  In fact, the two pleadings differ only with respect to their first and last pages, pages 1 and 13, respectively.  Pages 2 through 12 – containing all of the pleading's substantive allegations – are identical.  *See generally* Compl.; Am. Compl.  Page 1 of Plaintiff's Amended Complaint contains the caption of the case[2] with the following paragraphs:

> This is the plaintiff's Amended Complaint, leave was granted by this Honorable Court on September 25, 2017, by order of the Honorable Judge Joseph F. Bianco pursuant to F.R.C.P. 15(b)(c).  DE 71.
>
> 1.    This action arises under the United States' Constitution; particularly, under the provision of the Fourth, fifth, Eighth, and Fourteenth amendments to the constitution 38 here in of the United States, Statutes, and Federal Law; particularly, the Civil Rights Act, title U.S.C. Sec, 1983.  Therefore, the complaint is hereby amended to include the claim of Wrongful Imprisonment as reflected in the supporting facts with all respective attachments thereof and Cause of Action 2.3, realleged herein as if fully set forth.

Am. Compl. at 1.  Page 13 of the Amended Complaint contains only Plaintiff's signature and is dated October 16, 2017.

Judge Bianco's March 8, 2016 Memorandum & Order summarizes the facts as alleged in Plaintiff's initial Complaint.  Because the substantive allegations in the Amended Complaint are identical to those in the initial Complaint, and because the two filings are otherwise identical save the two discrepancies noted above, for purposes of consistency the Court reproduces Judge Bianco's summary of Plaintiff's allegations in full as it appears in his March 8, 2016 decision. The Court accepts these allegations as true for purposes of analyzing Defendants' motion for

---

[2]    The caption of his Amended Complaint identifies "Edward Schenck, Auren Doddato, ADA of Nassau County, Nassau County, et al."  Am. Compl. at 1.  The Court assumes Plaintiff is referring to "Lauren Doddato."  It is unclear under what authority Plaintiff purports to add this additional party.

judgment on the pleadings. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013). The Court does not, however, recite below – nor does it credit – conclusory statements, legal conclusions, or unwarranted deductions. *See Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014) (explaining that when analyzing the sufficiency of a complaint, "mere conclusions of law or unwarranted deductions need not be accepted").

Plaintiff alleges that, on or about January 4, 2008, Detectives John and Schepis arrested plaintiff without a warrant, and illegally seized $4,915.00 and other personal property from plaintiff, incident to the arrest. (Compl.¶ 5.) Plaintiff claims that, contrary to required law and the Nassau County Police Department's own regulation, Detectives John and Schepis failed to voucher the seized currency or record plaintiff's personal property. (*Id.* at ¶ 6.) Plaintiff alleges that, although "there has never been a valid charge or a valid judgment linking the U.S. currency to a felony" or "judgment pursuant to Art. 13A of the CPLR of The State of New York authorizing the forfeiture of the money," "despite all efforts, they still refused to return the money to plaintiff." (*Id.*)

Plaintiff alleges that, on or about September 30, 2009, former District Attorney Rice and ADA Huggard "in a ruse to legitimize the seizure of the $4,915.00 from plaintiff, prepared a letter entitled Rice v. Marcel C. Brisol, seeking to entice plaintiff to a fake settlement." (*Id.* at ¶ 7.) Plaintiff alleges that former District Attorney Rice and ADA Huggard "[k]new well that they had no authority to withhold the U.S.' (sic) currency from plaintiff. The contents of the letter are completely false, intimidating and deceptive, tailored to coerce threaten and extort property from plaintiff, using fraudulently the United States Mails Service." (*Id.*) Plaintiff alleges that his only conviction in Nassau County was by a jury trial on September 17, 2009, and "has no relation to the U.S. currency; and has since been reversed and vacated on direct appeal . . . leaving them no choice but to return the property." (*Id.*) Plaintiff alleges that "to date, there has never been any forfeiture action or Judgment against [him]." (*Id.*)

Plaintiff alleges that, on or about February 6, 2013, upon learning that plaintiff's judgment of conviction was vacated, former District Attorney Rice and ADA Doddato "specifically and falsely made an affirmation, purported to be in support to an application for a writ of

Habeas Corpus Ad Prosequendum," knowing they had no authorization to do so. (*Id.*) Plaintiff claims that, when Rice and Doddato had to disclose the judge who granted the writ, they lied and "named a Judge who had nothing to do with the writ, and never granted it." (*Id.*) Plaintiff alleges that, as a result, he was taken into custody, brought before a judge for "corrupt proceedings," and remanded to the Nassau County Correctional Center ("NCCC") indefinitely, even though Rice and Doddato were not ready for trial, there was no trial date, and the presiding judge was under mandatory retirement and, thus, could not preside over criminal trials. (*Id.*) Plaintiff claims that their "sole motive was retaliation to inflict multiple punishments to plaintiff for the same offense" and that they had a goal of "remov[ing] plaintiff from a civil non punitive confinement within the Immigration detention Facility [ ] to expose him and punish him in a punitive and criminal confinement atypical to the INS Detention Facility, without a judgment or due process, in their own jail Facility with the worst inhumane conditions." (*Id.*) Plaintiff alleges that the NCCC had "unconstitutional practices and [was] notorious for abuses and civil rights violations, unbearable as to amount to torture." (*Id.*) Specifically, plaintiff alleges that his cell was "so cold that you cannot sleep," that there was no clean drinking water, that there was "a broken sewage system with back up fecal material in the cell and they provided no glove to clean and deal with the situation," that "all the pipes are rusty," and that there was "no soap to clean the toilettes." (*Id.*) Plaintiff alleges that, as a result, he "caught a fungus infection in his left big toe." (*Id.*) Plaintiff further claims that "the whole place was filthy, infested with rodents [and] insects and the odor was noxious at all times; and the food was poorly prepared in very unsanitary condition (sic)." (*Id.*) Plaintiff claims that he was remanded to the NCCC for eight months. (*Id.*) Plaintiff alleges that, on or about November 11, 2013, he appeared before the Honorable Christopher Quinn, "who declared his imprisonment in the Nassau County Jail unconstitutional, and released him." (*Id.*)

Plaintiff also alleges that the Nassau County Probation Department is wrongfully withholding $8,415.00 from plaintiff. (Compl.¶ 9.) Plaintiff claims that he contacted the Nassau County Probation Department by phone and fax in order to get his money back, and was told that as long as his conviction has been vacated, he would get a refund, but they would need to verify it first. (*Id.*) Plaintiff alleges that "[a]fter about a month of inquiry," he was directed to speak directly with a specific attorney, who requested that plaintiff send him a copy of the judgment vacating the conviction. (*Id.*) Plaintiff contends that he spoke to Mr. Schenk, who stated that he needed to confer with the Nassau County District Attorney and

> prosecuting ADA. (*Id.*) Plaintiff alleges that, when he called Mr.
> Schenk back the next day, Mr. Schenk was "very hostile, [said that]
> he is not releasing any of the funds, and that plaintiff had not to call
> him anymore, and that 'we intend to get a conviction again, and that
> the system did not work, we will make sure it works fine next time.'"
> (*Id.*) Plaintiff contends that this was a "deliberate effort to deprive
> plaintiff of his property without the due process of law." (*Id.*)

*Bristol*, 2016 WL 873336, at *2-*3.

### D.   Other Pending Litigation Involving Plaintiff

The Court notes that there have been at least two other cases filed by the Plaintiff in the Eastern District of New York.  In *Bristol v. Nassau Cty et al.*, No. 08-CV-3480, Plaintiff brought suit against certain Nassau County defendants for alleged violations of his constitutional rights stemming from the same January 4, 2008 arrest underlying the claims here.  In a decision dated May 12, 2016, District Judge Ann Donnelly dismissed Plaintiff's complaint in its entirety and denied Plaintiff leave to amend.  *See generally Bristol v. Nassau Cty.*, No. 08 CIV. 3480, 2016 WL 2760339 (E.D.N.Y. May 12, 2016), *aff'd*, 685 Fed. App'x 26 (2d Cir. 2017).  That case is now closed.

In *Bristol v. Queens Cty. et al.*, No. 09-CV-5544, currently pending before this Court and District Judge Azrack,[3] Plaintiff brought suit against Queens County and Nassau County as well as individual defendants, pursuant to Section 1983, for alleged actions undertaken by officials of the two counties to deprive Plaintiff of his constitutional rights.  The facts underlying CV 09-5544 appear to differ from those of the instant action.  *See* CV 09-5544 at DE 99.  After several iterations of dispositive motion practice, the sole remaining claims in CV 09-5544 are Section 1983 causes of action for fabrication of evidence and illegal search, as well as limited conspiracy

---

[3]   This case was previously assigned to District Judge Bianco.

claims based on the alleged fabrication of evidence and illegal search claims, against four police officers. *See* CV 09-5544 at DE 326.

## III.    STANDARD OF REVIEW

It is established law in this Circuit that *pro se* filings like Plaintiff's Amended Complaint are to be liberally construed. *Shin v. Queens Hosp. Ctr. in Jamaica*, No. 14-CV-7237, 2014 WL 7422664, at *3 (E.D.N.Y. Dec. 31, 2014). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court must therefore "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 890 (2d Cir.1994)).

*Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Lomax v. Aegis Funding Corp.*, No. 9-2321, 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19, 2010) (quoting *Iwachiw v. N.Y. City Bd. of Educ.*, 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002)); *Guity v. Uniondale Union Free Sch. Dist.*, No. 15-CV-5693, 2017 WL 1233846, at *3 (E.D.N.Y. Mar. 31, 2017) ("Plaintiff's status as a *pro se* litigant does not relieve her of her obligation to adhere to all applicable procedural rules."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[P]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (internal quotations and citations omitted). Likewise, "mere conclusions of law or unwarranted deductions need not be accepted." *Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014).

11

Although recognizing these principles, the general standard of review on a Rule 12(c) motion nevertheless remains applicable here.  In deciding a Rule 12(c) motion for judgment on the pleadings, the Court utilizes the same standard of review applicable to motions to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  The Court must liberally construe the claims set forth in the Amended Complaint, accept all factual allegations in the Amended Complaint as true, and draw all reasonable inferences in favor of the Plaintiff.  *See Aegis Ins. Servs., Inc.*, 737 F.3d at 176; *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  The Plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom*. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the [Amended] [C]omplaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

## IV.    DISCUSSION

Defendants first argue that the "law of the case" doctrine proscribes all causes of action which Judge Bianco dismissed in his March 8, 2016 Memorandum and Order.  Defs.' Mem. II at 7.  Second, Defendants argue that Plaintiff's new claim of "wrongful imprisonment" must fail because (1) if it stems from his 2008 arrest, the statute of limitations has run, and (2) if it stems from his remand to the NCCC in 2013, Judge Bianco already found that no due process violation

12

existed because the remand was pursuant to the Appellate Division opinion remitting Plaintiff's

case for a new trial. *See id.* at 8-9. As to Plaintiff's surviving due process claim relating to

retention of Plaintiff's funds, Defendants argue that a second order of restitution against Plaintiff

exists, which was entered in 1996. *Id.* at 10. According to Defendants, this order provides the

necessary authority to withhold Plaintiff's seized funds. *Id.* Finally, Defendants contend that

Plaintiff's conditions of confinement claim must fall because Plaintiff has failed to allege

personal involvement of any prison official. *See id.* at 11-12. The Court will begin its analysis

by addressing Defendants' arguments relating to the law of the case doctrine.

### A.      The Law of the Case Doctrine

#### 1.      *Legal Principles*

The law of the case doctrine has two branches. "Under the first branch of the doctrine,

the trial court is barred from reconsidering or modifying any of its prior decisions that have been

ruled on by the court of appeals." *United States v. Uccio*, 940 F.2d 753, 757 (2d Cir. 1991).

Since no part of the instant action has been ruled on by the Second Circuit, this branch of the

doctrine is not applicable here. "The second and more flexible branch is implicated when a court

reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a

higher court." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002). Under the

guiding principle of the second branch of the doctrine, "when a court has ruled on an issue, that

decision should generally be adhered to by that court in subsequent stages in the same case."[4]

---

[4]   In *Arizona v. California*, the Supreme Court examined the differences between the law
of the case doctrine and the doctrine of *res judicata*:

> Unlike the more precise requirements of res judicata, law of the case
> is an amorphous concept. As most commonly defined, the doctrine
> posits that when a court decides upon a rule of law, that decision
> should continue to govern the same issues in subsequent stages in

*Uccio*, 940 F.2d at 758 (citing *Arizona*, 460 U.S. at 618). Although "the doctrine of the law of the case is not an inviolate rule," *Uccio*, 940 F.2d at 758 (quoting *United States v. Birney,* 686 F.2d 102, 107 (2d Cir. 1982)), the doctrine generally controls "unless 'cogent' and 'compelling' reasons militate otherwise." *Quintieri*, 306 F.3d at 1225 (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

### 2.    *Application to Plaintiff's Amended Complaint*

### a.    Plaintiff's Previously Dismissed Claims

Under the law of the case doctrine, the Court finds that there is no reason to depart from Judge Bianco's prior rulings with respect to dismissal of the majority of the claims in Plaintiff's initial Complaint.[5]  Plaintiff has provided no persuasive argument as to why the claims dismissed by Judge Bianco – (1) violations of his double jeopardy rights; (2) violations of his procedural due process rights related to the 2008 seizure of his personal property; (3) violations of his procedural due process rights related to his remand to the NCCC; and (4) all claims against individual defendant prosecutors and police officers with the exception of Sthen Thibault, for whom Plaintiff was permitted to substitute Edward Schenk – should not similarly be dismissed from the Amended Complaint, which, as outlined, is identical to the initial Complaint in every

---

the same case. Law of the case directs a court's discretion, it does not limit the tribunal's power. . . . [L]itigation proceeds through preliminary stages, generally matures at trial, and produces a judgment, to which after appeal, the binding finality of res judicata and collateral estoppel will attach.

460 U.S. 605, 618-19 (1983) (internal citations omitted), *decision supplemented*, 466 U.S. 144 (1984).

[5]  The Court finds it unnecessary to address Plaintiff's argument that Defendants' motion is in reality an improper motion for reconsideration.  *See* Pl.'s Opp'n. at 5-6.

material respect.  Accordingly, this Court respectfully recommends to Judge Bianco, for the reasons set forth in his March 8, 2016 Memorandum and Order, that to the extent Plaintiff has reasserted any claims alleging violations of his double jeopardy rights, procedural due process rights related to the 2008 seizure of his property or his remand to the NCCC, or any claims against any individual defendant with the exception of Edward Schenk, Defendants' motion for judgment on the pleadings be GRANTED and the foregoing claims be dismissed from the Amended Complaint with prejudice.

The Court's analysis will now proceed to address (1) Plaintiff's surviving conditions of confinement claim, (2) Plaintiff's surviving procedural due process claim related to the retention of his funds, and (3) Plaintiff's new claim of unlawful imprisonment.

### b.    Eighth Amendment Conditions of Confinement

The law of the case doctrine remains instructive in addressing Defendants' arguments with respect to Plaintiff's Eighth Amendment conditions of confinement claim.  As Judge Bianco's March 8, 2016 Memorandum and Order recounted, "[a] prisoner alleging [a conditions of confinement] claim may prevail only where he proves both an objective element – that the prison officials' transgression was 'sufficiently serious'– and a subjective element – that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.,* with 'deliberate indifference to inmate health or safety.'"  *Bristol*, 2016 WL 873336, at *7 (quoting *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir. 2002)).  Pointing out that "[c]ourts in the Second Circuit have recognized that 'depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment," *Bristol*, 2016 WL 873336, at *8 (quoting *Varricchio v. Cty. of Nassau,* 702 F.Supp.2d 40, 56 (E.D.N.Y. 2010)), and further observing that "an Eighth Amendment claim may be established by proof that the inmate was subjected for a

prolonged period to bitter cold," *Bristol*, 2016 WL 873336, at *8 (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)), Judge Bianco found that Plaintiff had "plausibly alleged the objective prong of his Eighth Amendment claim based on his allegations of unsanitary conditions in his cell, contaminated food, and a cell so cold that he could not sleep." *Bristol*, 2016 WL 873336, at *8.  As to the subjective prong, Judge Bianco stated that "Defendants' knowledge may be inferred by the simple fact that these Defendants must have viewed the conditions of the cell when they placed Plaintiff in it." *Id*. (quoting *Barnes*, 85 F. Supp. 3d at 738).  Judge Bianco found that Plaintiff had adequately pleaded both the objective and subjective prongs of his Eighth Amendment claim accordingly. *See Bristol*, 2016 WL 873336, at *8.

In the absence of extraordinary circumstances, under the law of the case doctrine, this Court is bound to recommend to Judge Bianco that, for the reasons stated in his March 8, 2016 Memorandum and Order, Plaintiff's Eighth Amendment conditions of confinement claim survive Defendants' (second) attempt to dispose of it.  Defendants have identified no reason why the law of the case doctrine should not mandate this finding where Plaintiff's claim is pleaded in identical fashion in his Amended Complaint as in his initial Complaint.  Indeed, Defendants refrain from addressing the law of the case doctrine at all in the context of this claim.

Apart from the law of the case doctrine, the arguments raised by Defendants in their second motion for judgment on the pleadings are unpersuasive.  Defendants' second motion focuses on the argument that Section 1983 claims require personal involvement and that Plaintiff has failed to plead such involvement in that he "has not identified any person or official whom he claims violated his rights or who exhibited deliberate indifference."  Defs.' Mem. II at 12. However, Judge Bianco stated that "because plaintiff is *pro se,* the Court liberally construes his complaint to allege a claim against the County of Nassau for his prison conditions." *Bristol*,

2016 WL 873336, at *7 n.5.  Based on this construction, this Court finds an implicit determination within Judge Bianco's March 8, 2016 decision that Plaintiff has adequately pleaded a colorable claim for Section 1983 municipal liability against the County of Nassau.  As such, and because Plaintiff's conditions of confinement claim is not raised against an individual defendant but rather against the County, Defendants' argument regarding personal involvement is moot.

For these reasons, this Court respectfully recommends to Judge Bianco that the logic of his prior ruling denying Defendants' first motion for judgment on the pleadings as to the initial conditions of confinement claim be applied to the identical allegations in Plaintiff's Amended Complaint.  Accordingly, the Court recommends that Defendants' second motion for judgment on the pleadings be DENIED as to this claim.

### B.    Procedural Due Process Related to the 2013 Retention of Plaintiff's Funds

In his March 8, 2016 decision, Judge Bianco determined that because the Appellate Division vacated Plaintiff's conviction in 2013, the restitution order upon which Defendants had relied to sustain their retention and distribution of Plaintiff's funds was no longer valid.  *See Bristol*, 2016 WL 873336, at *6.  Defendants' motion to dismiss this claim was denied, but Defendants were granted leave to "renew the motion on this ground with additional documentation and/or legal argument with respect to these funds."  *Id*.  With their second motion for judgment on the pleadings, Defendants have submitted a 1996 order of restitution entered by the County Court of Nassau County directing Marcel Bristol to "[p]ay the Nassau County Probation Department . . . as the designated restitution agency" the sum of $3,578.69."  *See* Declaration of Deputy County Attorney Liora Ben-Sorek ("Ben-Sorek Decl.") [DE 81-10], Ex. J.

17

The 1996 Restitution/Reparation Judgment Order lists "Avco Financial Services" as the "Restitution/Reparation Beneficiar[y]," and states "Re: Fraudulent Loan 10/26/93." *Id.*

As an initial matter, notwithstanding that in consideration of motions for judgment on the pleadings courts are generally limited to the four corners of the complaint, the Court takes judicial notice of the 1996 Restitution/Reparation Judgment Order as a publicly available court document. *See Bristol v. Nassau Cty.*, 685 Fed. App'x 26, 28 (2d Cir. 2017) (finding appropriate the "district court's judicial noticing of decisions in related state criminal proceedings proffered by defendants. These self-authenticating, publicly available records satisfied [Federal Rule of Evidence] 201(b)(2)").

Even taking into consideration the 1996 Restitution/Reparation Judgment Order, however, Defendants' arguments are not persuasive.  First, Defendants fail to even allege that the 1996 Restitution/Reparation Judgment Order remains unsatisfied.  Under these circumstances, basic concepts of fairness would seem to require Defendants to make at least a minimal evidentiary showing that Plaintiff has in fact failed to fulfill his obligations under the 1996 Restitution/Reparation Judgment Order, and that the Order remains legally enforceable. Importantly, Plaintiff argues that "this order expired January 18, 2016" and that "the restitution in connection with the underlying order was paid in full and therefore satisfied."  Pl.'s Opp'n. at 6.

Even if the Defendants were able to make some evidentiary showing, they point to no legal authority to support their position that the 1996 Restitution/Reparation Judgment Order authorizes them to retain money seized in connection with an entirely different set of criminal offenses, especially where Plaintiff's conviction for those offenses has been vacated. Underscoring the disconnect between the circumstances surrounding the 1996

Restitution/Reparation Judgment Order and the 2013 retention of funds (presumably stemming from a forfeiture), is the Second Circuit's observation that "[f]orfeiture and restitution are separate remedies with different purposes." *United States v. Pescatore,* 637 F.3d 128, 138 (2d Cir. 2011); *see United States v. Torres*, 703 F.3d 194, 203 (2d Cir. 2012) ("Case law and commentary establish that the forfeiture and restitution statutes serve different purposes."); *see also* 1 David B. Smith, PROSECUTION AND DEFENSE OF FORFEITURE CASES § 2.01 ("Forfeiture of the instrumentalities and profits of crime is supposed to interfere with criminal activity and at the same time impose an economic sanction upon criminals and those who connive with them, thus deterring crime."); RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 cmt. e (2011) (noting that the purpose of restitution in criminal cases is to compensate victims for harm suffered as result of criminal activity).

In light of the large gap in time and the circumstance between the 1996 Restitution/Reparation Judgment Order and the 2013 retention of Plaintiff's seized funds, and especially given the absence of any indication that the 1996 Order remains unsatisfied or legally enforceable, this Court respectfully recommends to Judge Bianco that Defendants' motion be DENIED, without prejudice, as to Plaintiff's due process claim with respect to the 2013 retention of his funds.[6]

### C.    False Arrest / False Imprisonment

The Court assumes Plaintiff's newly added claim of "Wrongful Imprisonment"[7] is brought pursuant to Section 1983.  Am. Compl. ¶ 1.  While the terms false arrest and false

---

[6]   Another issue for Defendants is that Plaintiff appears to be challenging the retention of $4,915.00 of seized funds, *see* Am. Compl. ¶¶ 5, 9, while the 1996 Restitution/Reparation Judgment Order directs the remittance of only $3,578.69.

[7]   The Court refers to Plaintiff's claim as one of "false imprisonment."

imprisonment are sometimes used in a mutually exclusive fashion, "false arrest is considered a kind of false imprisonment, and the claims are analyzed in identical fashion." *Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005). The elements of a Section 1983 false imprisonment claim are essentially the same as those under New York law. *See Boyd v. City of New York,* 336 F.3d 72, 75 (2d Cir. 2003) (citing *Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir. 1992)). "To state a claim for false arrest under § 1983, a plaintiff must plausibly allege that: '(1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified.'" *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 515 (S.D.N.Y. 2013) (quoting *Richardson v. N.Y.C. Health & Hosps. Corp.,* No. 05 Civ. 6278, 2009 WL 804096, at *7 (S.D.N.Y. Mar. 25, 2009)).

Defendants argue that Plaintiff's claim must fail, regardless of the bases on which Plaintiff purports to bring such a claim. It is unclear precisely which "imprisonment" Plaintiff's claim encompasses. Defendants contend that if Plaintiff's new claim of false imprisonment is attempting to challenge the legality of his initial arrest in 2008, his claim is barred by the three-year statute of limitations applicable to Section 1983 actions. Defs.' Mem. II at 8; *see Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 Fed. App'x 672, 674 (2d Cir. 2009) (explaining that "[t]he statute of limitations for a § 1983 action arising in New York is three years") (citing *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir. 1994)). The Court disagrees. The three-year statute of limitations for a Section 1983 false imprisonment claim begins to run "when the alleged false imprisonment ends." *Wallace v. Kato,* 549 U.S. 384, 388-89 (2007). Here, it is not clear when Plaintiff's confinement ended. The Court therefore declines to recommend dismissal on these grounds.

Likewise, Defendants maintain that if Plaintiff's false imprisonment claim is an attempt to challenge is remand to the NCCC in 2013, his claim must fail because "this Court has already ruled that no due process violation existed." Defs.' Mem. II at 8. Previously, Judge Bianco did determine that because Plaintiff's remand was pursuant to the Appellate Division's opinion remitting Plaintiff's case for a new trial, there was no colorable due process claim. *Bristol*, 2016 WL 873336, at *5. But Plaintiff's false imprisonment claim is not a Fourteenth Amendment due process claim; rather, it is a claim brought pursuant to the Fourth Amendment. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (explaining that a Section 1983 false arrest claim rests "on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause") (citations omitted).

Notwithstanding this distinction, any false imprisonment claim Plaintiff attempts to raise which is grounded on the remand of his case to the Supreme Court, Nassau County, and of his person to the NCCC – pursuant to the Appellate Division's 2013 opinion – must fail because Plaintiff's confinement was "justified." *Hershey*, 938 F. Supp. 2d at 515. As the Appellate Division recounted, "the hearing court properly determined that the police lawfully stopped the vehicle in which [Plaintiff] was a passenger, and that his arrest was supported by probable cause." *Bristol*, 958 N.Y.S.2d at 217. The Appellate Division also found that "the verdict of guilt was not against the weight of the evidence." *Id*. And Judge Bianco determined that because "there was no finding [by the Appellate Division] that the verdict was against the weight of the evidence, the subsequent prosecution of plaintiff did not violate plaintiff's rights." *Bristol*, 2016 WL 873336, at *5.

This Court determines, consistent with the findings of the state trial court, the Appellate Division, and Judge Bianco's March 8, 2018 Memorandum and Order, that there is no indication

or colorable argument that can be raised to suggest that the return of Plaintiff to the NCCC in 2013 was not legally justified.[8]  Because Plaintiff is unable to plead an essential element of his false imprisonment claim, this claim must fail.

On a related issue, the Court finds unpersuasive Plaintiff's argument that the Appellate Division erred in determining that his conviction was not against the weight of the evidence in light of *Nelson v. Colorado*, 137 S.Ct. 1249 (2017).  *See* Pl.'s Opp'n. at 3-4.  The Supreme Court's decision in *Nelson* "concern[s] the continuing deprivation of property after a conviction has been reversed or vacated, *with no prospect of reprosecution*." 137 S. Ct. at 1255 (emphasis added).  Unlike the circumstances in *Nelson*, Plaintiff's case was remitted for the express purpose of retrial.  As such, *Nelson* is not applicable here.

Based on the foregoing analysis, this Court respectfully recommends to Judge Bianco that Defendants' motion for judgment on the pleadings with respect to Plaintiff's false imprisonment claim be GRANTED, and this claim be dismissed, with prejudice.

### D.      Leave to Re-Plead

The Court has considered whether Plaintiff should be given a still further opportunity to re-plead his claims against the Defendants.  "When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Aquino v. Prudential Life &*

---

[8]   Defendants argue that if Plaintiff were to succeed on his false imprisonment claim, he would run headlong into the prohibition on Section 1983 actions which imply the invalidity of a criminal conviction as laid out in *Heck v. Humphrey*, 512 U.S. 477 (1994).  *See* Defs.' Reply at 1.  The Court does not find *Heck* controlling here.  Since Plaintiff's conviction was vacated and his case sent back for a new trial, there is currently no "outstanding criminal judgment against the [P]laintiff" which could be invalidated by a successful civil action.  *Heck*, 512 U.S. at 487 ("[I]f the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed.") (emphasis in original).

*Cas. Ins. Co.*, 419 F. Supp. 2d 259, 278 (E.D.N.Y. 2005); *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them."). The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999), *overruled on other grounds by Gonzaga v. Doe*, 536 U.S. 273 (2002); *see* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

Even under this liberal standard, however, a court may decline to provide the plaintiff with an opportunity to re-plead if the court finds that the plaintiff "cannot correct the defects in his federal claims," and, as a result, "any attempt to amend the pleading . . . would be futile." *Shorter v. Rice*, No. 12-0111, 2012 WL 1340088, at *5 (E.D.N.Y. Apr. 10, 2012); *see Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [the plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

As noted, Plaintiff has previously been given the opportunity to amend his pleadings. More importantly in the Court's view, however, is the fact that any attempt by the Plaintiff to re-plead claims previously dismissed by Judge Bianco – claims which this Court has now also recommended dismissal – would be futile. Consequently, this Court respectfully recommends to Judge Bianco that Plaintiff be DENIED leave to re-plead the following claims: (1) violations of his right to be free from double jeopardy; (2) violations of his procedural due process rights related to the 2008 seizure of his personal property; (3) violations of his procedural due process rights related to his return to and re-incarceration at NCCC; (4) all dismissed claims against

individual prosecutors and police officers, with the exception of Edward Schenk, whom Judge Bianco permitted Plaintiff to substitute in the caption for Sthen Thibault; and (5) false arrest or false imprisonment.

## V.   CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Bianco that Defendants' motion for judgment on the pleadings with respect to Plaintiff's Amended Complaint be GRANTED, in part, and that the following claims be dismissed, with prejudice: (1) violations of Plaintiff's right to be free from double jeopardy; (2) violations of his procedural due process rights related to the 2008 seizure of his personal property; (3) violations of his procedural due process rights related to his return to and re-incarceration at NCCC; (4) all dismissed claims against individual prosecutors and police officers, with the exception of Edward Schenk, whom Judge Bianco permitted Plaintiff to substitute in the caption for Sthen Thibault; and (5) false arrest or false imprisonment.

The Court further respectfully recommends to Judge Bianco that Defendants' motion for judgment on the pleadings with respect to Plaintiff's Amended Complaint be DENIED, in part, such that Plaintiff's (1) Eighth Amendment conditions of confinement claim and (2) due process claim related to the 2013 retention of his personal property be permitted to proceed.

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  Objections from a *pro se* litigant must be mailed directly to the Chambers of the Hon. Joseph Bianco.  **A courtesy copy of any objections filed is**

**to be sent to the Chambers of the Hon. Joseph F. Bianco, and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections**.

Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Counsel for Nassau County is directed to serve a copy of this Report and Recommendation forthwith upon pro se plaintiff Bristol by e-mail and first-class mail and to file proof of such service on ECF by February 20, 2019**.

**SO ORDERED.**

Dated: Central Islip, New York
      February 15, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

25